**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs, the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VICTOR BALLAST and LUIS SIMONE,** **Individually and On Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | **CLASS & COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| **GRIFFIN INDUSTRIES, LLC, GRIFFIN SECURITY SERVICES, INC., CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., MICHAEL E. SMITH, WINSTON SMITH and ANDY MUÑIZ, Jointly and Severally,** | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiffs Victor Ballast ("Ballast") and Luis Simone ("Simone" and, together with Ballast, the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs are construction flaggers who worked for Defendants on public streets, roadways and sidewalks throughout New York City and New York State, pursuant to contracts with Consolidated Edison Company of New York, Inc. ("Con Edison"). Plaintiff Simone additionally performed work for Defendants as a security guard at multiple locations in the Bronx.

2.     For their work, Defendants paid Plaintiffs an hourly rate that did not include prevailing wages or supplemental benefits when they performed work on gas, electric and other utility projects on public streets, roadways and sidewalks throughout New York City and New York State. Further, Plaintiffs were not paid wages of any kind for time spent traveling between job sites and Defendants' office or for time spent waiting for job assignments, resulting in significant unpaid regular and overtime wages each week.

3.     Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.*  Plaintiffs also seek to recover unpaid prevailing wages, daily overtime and supplemental benefits which they and the members of the putative Class were entitled to receive for work, including weekend work, they performed pursuant to contracts entered into between Griffin Industries, LLC and/or Griffin Security Services, Inc. and Con Edison, which required payment of prevailing wages.

4.     Plaintiffs also bring claims for unpaid wages pursuant to NYLL §§ 190, 193, unpaid spread-of-hours premiums, unreimbursed business expenses and for Defendants' failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.*

5.     Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL and New York common law claims on behalf

of themselves and a Federal Rule of Civil Procedure 23 class of all persons employed by Defendants who worked as construction flaggers in New York City or New York State over the six (6) year period preceding the filing of this complaint.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10.      On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continues until April 19, 2020.

## THE PARTIES

**Plaintiffs:**

11.      Plaintiff Ballast was, at all relevant times, an adult individual residing in Bronx County, New York.

12.     <u>Plaintiff Simone</u> was, at all relevant times, an adult individual residing in Bronx County, New York.

13.     Throughout the relevant time period, Plaintiffs performed work for Defendants on public streets, roadways and sidewalks throughout New York City and New York State.

14.     Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

15.     Defendant Griffin Industries, LLC is an active New York corporation with its principal place of business located at 587 Crescent Avenue, Bronx, New York 10458.

16.     Defendant Griffin Security Services, Inc. is an active New York corporation with its principal place of business located at 242 West 36th Street, 4th Floor, New York, New York 10008.

17.     Griffin Industries LLC and Griffin Security Services, Inc. are hereinafter referred to as "Griffin."

18.     Upon information and belief, during the relevant time period, Griffin maintained offices and staff at 587 Crescent Avenue, Bronx, New York 10458, 2322 Arthur Avenue, Suite 207, Bronx, New York 10458, 242 West 36th Street, 4th Floor, New York, New York 10008 and 519 8th Avenue, 7th Floor, New York, New York 10018.

19.     Upon information and belief, certain Griffin employees worked as both construction flaggers and security guards during their employment with Defendants, depending on their specific job assignments. As discussed in greater detail below, Plaintiff Simone performed both flagging and security work for a brief period near the end of his employment with Defendants and recalls working on security assignments with another individual whom he had previously

observed working for Defendants as a construction flagger. During the period that Plaintiff Simone worked as a security guard, he continued to report to the same office as the flaggers, located at 587 Crescent Avenue, Bronx, New York 10458, to pick up his payment and address any other administrative matters relating to his work. Griffin additionally employed individuals who worked solely as security guards.

20.    Upon information and belief, Griffin flaggers frequently received "Con Ed Flagger Site Location Sign Off Sheets" and payroll discrepancy forms from the Griffin office that were labeled "Griffin Security Services, Inc." These forms typically contained either the 2322 Arthur Avenue, Suite 207, Bronx, New York 10458 or the 242 West 36th Street, 4th Floor, New York, New York 10008 addresses.

21.    The operations of Griffin Industries, LLC and Griffin Security Services, Inc. are interrelated and unified and these entities are a single enterprise and/or joint employers of Plaintiffs and the members of the putative FLSA Collective and Class.

22.    Defendant Consolidated Edison Company of New York, Inc. ("Con Ed" and, together with Griffin, the "Corporate Defendants") is an active New York Corporation with its principal place of business located at 4 Irving Place, New York, NY 10003.

23.    At all relevant times, the Corporate Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

24.    Upon information and belief, at all relevant times, the Corporate Defendants had gross revenues in excess of $500,000.00.

25.    The Corporate Defendants are joint employers of Plaintiffs and the Collective Action Members and Class Members.

18.     Upon information and belief, Defendants Michael Smith ("M. Smith"), Winston Smith ("W. Smith") and Andy Muñiz ("Muñiz" and, together with M. Smith and W. Smith, the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") are owners and operators of Griffin who set the company's payroll policies, including the unlawful practices complained of herein.

19.     Plaintiffs and Defendants' other employees typically referred to Defendant Muñiz as "Nuñez" throughout their respective employment periods.

20.     Defendants Griffin, M. Smith, W. Smith and Muñiz are hereinafter referred to as the "Griffin Defendants."

21.     Upon information and belief, throughout the relevant time period, the Individual Defendants were in charge of determining Griffin's policies with respect to payroll and otherwise running the business of Griffin.

26.     In corporate filings with the New York State Department of State, Division of Corporations, Defendant M. Smith is listed as the contact person for DOS Process for Griffin Industries, LLC.

27.     The Individual Defendants participated in the day-to-day operations of Griffin and acted intentionally in their direction and control of Plaintiffs and Griffin's other similarly situated employees and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

28.     Upon information and belief, Defendant Muñiz generally oversaw issues relating to Griffin employees and frequently spoke with employees about payroll discrepancies and incidents that occurred on job sites. Defendant Muñiz additionally disciplined, suspended and

terminated employees and signed employees' paychecks. Upon information and belief, Defendant Muñiz ran orientation sessions for new employees.

29.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants jointly employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

30.     At all relevant times, Plaintiffs and Class Members were jointly employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

31.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs brings their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since April 17, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as construction flaggers (the "Collective Action Members").

32.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wages for all hours worked or overtime premiums for work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiffs and the Collective Action Members did not receive legally-required minimum wages for all hours worked or overtime premium payments for all hours worked in excess of forty (40) hours per week.

33.     Plaintiffs and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

## <u>NEW YORK RULE 23 CLASS ALLEGATIONS</u>

34.    Pursuant to the NYLL and the New York common law, Plaintiffs bring their Third through Eleventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since April 17, 2014 and through the entry of judgment in this case (the "Class Period") who worked as construction flaggers (the "Class Members").

35.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under Federal Rule of Civil Procedure.

36.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

37.    Upon information and belief, there are in excess of forty (40) Class Members.

38.    <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.    whether Defendants breached contracts with Con Edison by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;

d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members supplemental benefits on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules;

e.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members the prevailing wage overtime premiums for work performed in excess of eight (8) hours per day and for weekend work;

f.  whether Defendants were unjustly enriched by failing to pay Plaintiffs and the Class Members at prevailing wage rates on prevailing wage jobs;

g.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members wages for all hours worked;

h.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wages for all hours worked;

i.  whether Defendants failed to pay overtime wages to Plaintiffs and the Class Members for all hours worked over forty (40) in a given week;

j.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

k.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

l.  whether Defendants failed to provide proper wage notice to Plaintiffs and the Class Members at the beginning of their employment and when their wage rate(s) changed, as required by the NYLL;

m. whether Defendants failed to reimburse Plaintiffs for the cost of bounced checks, as

well as gas, tolls and other vehicle expenses when they were required to use their personal vehicles for work;

n.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

o.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

39.  <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, were construction flagger employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid prevailing wages, supplemental benefits and/or daily/weekly overtime prevailing wages for work performed on New York City and New York State public streets, roadways and sidewalks; were not paid minimum wages for all hours worked; were not paid overtime wages for all hours worked over forty (40) in a given workweek; were not paid wages of any kind for certain hours worked, including time spent waiting for job assignments and traveling to and from Defendants' office and the job sites; were not paid spread-of-hours premiums when working a shift of ten (10) or more hours and/or a split shift; were not reimbursed for the cost of bounced checks, as well as gas, tolls and other vehicle expenses, when they were required to use their personal vehicles for work; and were not provided with proper wage notices and wage statements. If Defendants are liable to the Class Representative for the Class claims enumerated in this Complaint, they are also liable to all Class Members. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

40.  <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There

are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

41.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

42.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

43.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the Corporate Defendants.

44.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other currently pending litigation concerning this controversy, except for *Moses, et al. v. Griffin Industries, LLC, et al*., Civil Action No. 18-cv-1200, currently pending in the United States District Court for the Southern District of New York; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Company**

45.    At all relevant times, Griffin has employed flaggers in the construction industry.

46.    The Griffin Defendants additionally employ a team of security guards.

47.    Defendant Griffin Industries, LLC was registered with the New York State Department of State, Division of Corporations on December 6, 2011.

48.    According to the public LinkedIn profile of Michael Smith,

I recently completed a successful, 20-year tenure as the President and CEO of Griffin

Security Services, Inc. Under my leadership, I spearheaded the accelerated growth of a tri-state security firm, boosting employees from 40 to 500 and generating $15M+ in annual revenue until finally negotiating the lucrative sale of the business. My responsibilities included managing corporate finances, training employees, establishing protégée protocols, delegating work. I also fostered long-term relationships with customers by delivering exceptional security services and efficiently resolving their problems.

*See* https://www.linkedin.com/in/michael-smith-10986b9.

49.     According to the public LinkedIn profile of Andy Muñiz, Defendant Muñiz served as Vice President of Griffin Security Services, Inc. from April 2004 through December 2018. *See* https://www.linkedin.com/in/andy-mu%C3%B1iz-5151654a?trk=people-guest_people_search-card.

50.     At all relevant times, the Individual Defendants have been in charge of the day-to-day operations of Griffin including, among other things, hiring and firing employees, resolving complaints and conflicts, and setting the schedules and wage rates of employees.

51.     Upon information and belief, at all relevant times, the Individual Defendants handled the operations of Griffin's business and gave direction to their supervisors to ensure that the work was being conducted in accordance with their policies and procedures, including the policies complained of herein.

52.     At all relevant times, Defendant Con Ed has been in the public utilities industry, providing electric, gas and steam to New York City and Westchester County, New York.

53.     Upon information and belief, Griffin entered into contracts as prime and/or sub-contractors with Con Edison that required all employees working on the projects, including

Plaintiffs and the Class Members, to be paid prevailing wages for work performed on New York City and New York State public roadways and sidewalks.

54.    Upon information and belief, Defendant Griffin contracted exclusively with Con Ed to provide construction flaggers on Con Ed job sites.

55.    Plaintiffs frequently observed Defendant W. Smith in the Griffin office located at 587 Crescent Avenue, Bronx, New York 10458 giving job assignments to Plaintiffs and Defendants' other construction flaggers, speaking on the phone with Con Ed supervisors and otherwise running the business operations of Griffin.

56.    Upon information and belief, Mario Lopez, Nique Irving, Dane Yee and Sexton Alston are supervisors at Griffin. Upon information and belief, the Individual Defendants are in constant contact with Lopez, Irving, Yee, Alston and Defendants' other supervisors to ensure that the company is operating in accordance with their standards and policies.

**The Con Edison Contracts**

57.    Upon information and belief, the Griffin Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with Con Edison to provide flagging work on New York City and New York State public roadways and sidewalks, or with prime contractors not currently known, to furnish labor, material and equipment to perform work on New York City and New York State public roadways and sidewalks (the "Con Edison Contracts").

58.    Upon information and belief, the Con Edison Contracts obligated Defendants to pay Plaintiffs and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening. Specifically, the "labor" provision of Con Edison Standard Terms and

Conditions for Construction Contracts ("Contract Terms") provides in pertinent part:

> Where Contractor employs workers on sites where a permit to use or open a street (including excavating the street) is required and New York City Administrative Code Section 19-142, or its successor (or a similar law, regulation, or code pertaining to sites located outside of New York City ("Similar Local Law")) is applicable, Contractor agrees that pursuant to and in furtherance of the requirements of New York City Administrative Code Section 19-142, or its successor, (or the requirements of the Similar Local Law) and the terms and conditions of the permit: none but competent workers, skilled in the work required of them, shall be employed thereon; the prevailing scale of union wages shall be the prevailing wage for similar titles as established by the Comptroller of the City of New York pursuant to Section 220 of the New York State Labor Law (or as established by such other fiscal officer, as specified in Section 220 of the New York State Labor Law, for workers on permitted sites located outside of New York City to which a Similar Local Law applies), paid to those so employed, and Contractor shall pay that prevailing wage to workers so employed.

59.    Upon information and belief, the Contract Terms, including the labor provision requiring payment of prevailing wages, were incorporated into all of the Con Edison Contracts.

60.    Defendants' failure to pay Plaintiffs proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

61.    As employees of Defendants who were assigned to work on Defendants' excavation projects, Plaintiffs and the Class Members were intended third-party beneficiaries of Defendants' Con Edison Contracts.

62.    Upon information and belief, each project which involved street opening upon which Griffin performed work pursuant to the Con Edison Contracts in New York City, required a Street Opening Permit issued by the NYC Department of Transportation (DOT). The Street Opening Permit included various stipulations for the work that was being performed, including, but not limited to, stipulations regarding the wages that were to be paid to all workers on the excavations. Specifically, the permits provided:

WAGE01  NYC ADMINISTRATIVE CODE, 19-142, WORKERS ON EXCAVATIONS: A PERSON TO WHOM A PERMIT MAY BE ISSUED, TO USE OR OPEN A STREET, SHALL BE REQUIRED, BEFORE SUCH PERMIT MAY BE ISSUED, TO AGREE THAT NONE BUT COMPETENT WORKERS, SKILLED IN THE WORK REQUIRED OF THEM, SHALL BE EMPLOYED THEREON, (CONT. ON STIP WAGE02)

WAGE02  ...AND THAT THE PREVAILING SCALE OF UNION WAGES SHALL BE THE PREVAILING WAGE FOR SIMILAR TITLES AS ESTABLISHED BY THE FISCAL OFFICER PURSUANT TO SEC. TWO HUNDRED TWENTY OF THE LABOR LAW, PAID TO THOSE SO EMPLOYED.

63.    As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to Plaintiffs and the Class Members should have been annexed to and formed a part of the Con Edison Contracts. If not annexed to the Con Edison Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

64.    The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Con Edison Contracts was made for the benefit of all workers furnishing labor on New York City and New York State public roadways and sidewalks, and, as such, the workers furnishing labor on New York City and New York State public roadways and sidewalks are the beneficiaries of that promise and the contracts entered into between Defendants.

65.    In furtherance of the Con Edison Contracts entered into by Defendants, Plaintiffs and other members of the putative Class performed various flagging tasks, including but not limited to, holding stop/go signs, directing pedestrian and vehicular traffic around construction sites, placing signs around the construction site, positioning safety barriers, cones and caution tape to permit movement of construction equipment, ensuring that no pedestrians were near construction vehicles, closing street intersections and escorting construction vehicles, including

15

backhoes, cutters and dump trucks, as they moved in and out of the construction site to ensure safe passage.

66.    Upon information and belief, Defendant Griffin is compensated by Con Edison to provide flagging services, at the prevailing union wage rates for all of the workers on the projects, including Plaintiffs and Defendants' other construction employees.

67.    Throughout the relevant time period, Plaintiffs and Griffin's other construction workers only performed work on Con Ed projects. Griffin contracted exclusively with Con Ed to provide flaggers on Con Ed job sites.

68.    Throughout the relevant time period, Defendant Con Ed acted as a joint employer of Plaintiffs and Defendants' other construction flaggers and vigorously supervised, directed and controlled their work. On each job site, Plaintiffs and Defendants' other flaggers worked under the sole supervision of a Con Ed supervisor, who assigned them to specific corners or sections of roadway and told them which streets to close and where to erect "Men at Work" signs and other signage. Con Ed supervisors also instructed Griffin employees what times to fill in on their time sheets, which had to be signed by the Con Ed supervisor on the site, as well as what time to take a break. Con Ed supervisors routinely retained copies of Griffin employees' time sheets.

69.    Throughout the relevant time period, Griffin did not send supervisors to Con Ed job sites. Thus, Plaintiffs were solely supervised by Con Ed supervisors and were required to follow Con Ed instructions in order to continue working on Con Ed job sites.

70.    In addition to Con Ed supervisors, Plaintiffs and Griffin's other construction flaggers worked alongside a Con Ed crew chief, as well as Con Ed manual workers, who performed work on electrical and gas systems below public streets.

71.    Con Ed supervisors routinely informed the Griffin Defendants which employees

16

they did and did not want to work on specific job site or with a specific crew. For example, Plaintiff

Ballast was informed by Griffin employees on numerous occasions that Con Ed had requested him

to work on a specific job. Additionally, Con Ed supervisors frequently informed Ballast directly

that they wanted him to return to a particular job site.

72.     Upon information and belief, as of June 2018, Griffin lost its contract with Con Ed

and, as a result, no longer provides flaggers on Con Ed job sites.

**Plaintiffs' Work for Defendants**

73.     <u>Plaintiff Ballast</u> worked for Defendants as a construction flagger from in or around

January 2018 through in or around June 2018 (the "Ballast Employment Period").

74.     Throughout the Ballast Employment Period, Plaintiff Ballast performed flagging

work on public streets, roadways and sidewalks in the Bronx and throughout Westchester County.

75.     Plaintiff Ballast was hired by W. Smith, who explained to him the hours that he

would be working, when to arrive at the office in the morning, and what his pay rate would be.

Plaintiff Ballast additionally frequently received job assignments from Defendant W. Smith.

76.     Throughout the Ballast Employment Period, Plaintiff Ballast typically worked

approximately twelve (12) hours per day, six (6) days per week, and sometimes seven (7), for a

total of approximately seventy-two (72) hours per week, and sometimes more, on Con Ed job sites.

If Plaintiff Ballast worked a Sunday, he typically worked approximately twelve (12) additional

hours during the week, such that he worked a total of approximately eighty-four (84) hours per

week on Con Ed job sites.

77.     Throughout the Ballast Employment Period, Plaintiff Ballast was required to arrive

at the Griffin office, located at 587 Crescent Avenue, Bronx, New York 10458, between

approximately 5:45 am and 6:00 am, as he was instructed by Defendant W. Smith, in order to be

assigned a job. Upon arrival, Plaintiff Ballast was required to sign in with the office to indicate his availability to work. He was then required to wait approximately one and one-half to two (1.5-2) hours in his vehicle for a job assignment. Once he was assigned a job, Ballast returned upstairs to the office to retrieve a form containing fields for the job location, time in and time out, to be filled out and signed by a Con Ed supervisor, and sign out a radio and/or flashlight, if the nature of the job so required.

78.     Plaintiff Ballast was required to return the completed time sheet to the Griffin office, located at 587 Crescent Avenue, Bronx, New York 10458, at the end of each workday.

79.     Throughout the Ballast Employment Period, Plaintiff Ballast was not paid wages of any kind for the time spent waiting for jobs, picking up and dropping off time sheets and signing out and returning equipment.

80.     Throughout the Ballast Employment Period, Plaintiff Ballast typically spent an additional forty-five to sixty (45-60) minutes driving his personal vehicle from the Griffin office to the Con Ed job site to which he was assigned, plus another forty-five to sixty (45-60) minutes driving back to the office at the end of the workday to return his time sheet and equipment. As discussed below, Plaintiff Ballast was not paid wages for all of the time that he spent traveling between the Con Ed job sites and the Griffin office.

81.     For his work, Plaintiff Ballast was paid thirteen dollars ($13.00) per hour  for hours worked up to forty (40) in a week, and nineteen dollars and fifty cents ($19.50) for hours worked in excess of forty (40) in a week, for hours worked on Con Ed job sites, not including time spent waiting for job assignments or time spent traveling between the Griffin office and Con Ed job sites.

82.     Throughout the Ballast Employment Period, Plaintiff Ballast did not receive

benefits of any kind.

83.     On several occasions, Plaintiff Ballast disclosed his pay rate to certain Con Ed employees and supervisors. These Con Ed employees informed Ballast that they were surprised at "how little" he earned, as it was their understanding that all other construction workers on the site were earning at least the applicable union laborer rate, which they believed was approximately forty-two dollars ($42.00) per hour.

84.     Plaintiff Simone worked for Defendants as a construction flagger for a period of approximately nine (9) months from in or around late summer or early fall 2017 through in or around June 2018, excepting a period of three (3) or four (4) days in or around June 2018, when he worked as a security guard for Griffin (the "Simone Employment Period").

85.     Throughout the Simone Employment Period, Plaintiff Simone typically performed work on public streets, roadways and sidewalks throughout Manhattan, the Bronx and Westchester County. Specifically, Plaintiff Simone recalls working at a site near 3rd Avenue and 149th Street, for a period of approximately two (2) months.

86.     Throughout the Simone Employment Period, Plaintiff Simone typically worked between five to ten (5-10) hours per day, five to six (5-6) days per week, for a total of approximately forty to sixty (40-60) hours per week on Con Ed Job sites.

87.     Throughout the Simone Employment Period, Plaintiff Simone was required to arrive at the Griffin office, located at 587 Crescent Avenue, Bronx, New York 10458, at 6:00 am in order to be assigned a job. Upon arrival, Plaintiff Simone was required to sign in with the office to indicate his availability to work. He was then required to wait approximately one and one-half to two (1.5-2) hours in his vehicle for a job assignment. Once he was assigned a job, Simone returned upstairs to the office to retrieve a form containing fields for the job location, time in and

time out, to be filled out and signed by a Con Ed supervisor, and sign out a radio and/or flashlight, if the nature of the job so required.

88.     Plaintiff Simone was required to return his completed time sheet to the Griffin office, located at 587 Crescent Avenue, Bronx, New York 10458, at the end of each workday.

89.     Plaintiff Simone was not paid wages of any kind for the time spent waiting for jobs, picking up and returning time sheets and signing out and returning equipment.

90.     Throughout the Simone Employment Period, Plaintiff Simone typically spent an additional fifteen to forty-five (15-45) minutes driving his personal vehicle from the Griffin office to the Con Ed job site to which he was assigned, plus another fifteen to forty-five (15-45) minutes driving back to the office at the end of the workday to return his time sheet and equipment. As discussed below, Plaintiff Simone was not paid wages for all of the time that he spent traveling between the Con Edison job sites and the Griffin office.

91.     For his work, Plaintiff Simone was paid thirteen dollars ($13.00) per hour  for hours worked up to forty (40) in a week, and nineteen dollars and fifty cents ($19.50) for hours worked in excess of forty (40) in a week, for hours worked on Con Ed job sites, not including time spent waiting for job assignments or time spent traveling between the Griffin office and Con Ed job sites.

92.     Throughout the Simone Employment Period, Plaintiff Simone did not receive benefits of any kind.

93.     For a period of approximately three (3) or four (4) days in or around June 2018, Plaintiff Simone worked as a security guard for Defendants at a union event in a Manhattan hotel and a residential building on Gunhill Road, near Evander Childs High School, near Evander Childs High School on Gunhill Road in the Bronx. He typically received security job assignments from

Sexton Alston, a Griffin supervisor.

94.     When Plaintiff Simone worked as a security guard, he typically worked approximately eight (8) hours per day.

95.     Plaintiff Simone continued to be paid his regular hourly rate of thirteen dollars ($13.00) per hour when he worked as a security guard for Griffin.

96.     Plaintiff Simone never received his paycheck for his final week of work with Griffin, during which he performed both flagging and security work. A supervisor, Sexton Alston, informed him that in order to receive his final paycheck, he would need to return his uniform shirt and pants. When Plaintiff Simone informed Alston that he had had the pants tailored, Alston reiterated that he would not receive his check until he returned all of the components of his uniform.

97.     Upon information and belief, Griffin compensated employees up to one (1) hour per day for travel time. However, as mentioned above, Plaintiffs frequently spent well in excess of one (1) hour per day traveling between the Griffin office and Con Ed job sites.

98.     Plaintiffs were required to return their signed time sheets to the Griffin office, located at 587 Crescent Avenue, Bronx, New York 10458, at the end of each work day. On numerous occasions, various Griffin office workers informed them that if they did not return the time sheets, they would not get paid for their work.

99.     Although Plaintiffs' paystubs contain certain untaxed income that Griffin classified as "vehicle expenses," it is unclear what these amounts were meant to cover. When the amount paid for "vehicle expenses" is divided by the total number of regular and overtime hours worked, it routinely amounts to an additional two dollars ($2.00) per hour. For example, during the June 3,

2018 through June 9, 2019 pay period,[1] Plaintiff Ballast was paid for 36.50 "regular" hours and 36.50 overtime hours, for a total of seventy-three (73) hours, and received one hundred and forty-six dollars ($146.00) in payment for "vehicle expenses." Thus, if Plaintiffs were truly paid an additional two dollars ($2.00) per hour for all hours worked, the overtime rate paid should have been slightly higher (i.e., $22.50 per hour for hours worked in excess of 40 in a week, as opposed to $19.50).

100.    Throughout their respective employment periods, Plaintiffs were required to pay for gas and tolls incurred while driving between the Griffin office and Con Ed job sites, in addition to regular maintenance costs. Despite the fact that the Griffin Defendants required Plaintiffs to use their personal vehicles, Plaintiffs were never reimbursed for these costs.

101.    New York State reimburses employees for business use of privately owned automobiles based on the standard mileage allowance established by the Internal Revenue Service ("IRS"). According to the Office of the New York State Comptroller, as of January 1, 2017 and January 1, 2018, Plaintiffs should have been paid $0.535 and $0.545 per mile, respectively. (*See* https://www.osc.state.ny.us/agencies/guide/MyWebHelp/Content/XIII/4/C.htm).

102.    Throughout their respective employment periods, Plaintiffs were paid via a payroll check, which they received on a biweekly basis from Griffin office employees.

103.    On numerous occasions when trying to collect their payments, the checks that Defendants provided would bounce due to a lack of funds, and Plaintiffs would be charged a fee per bounced check by their respective banks. Defendants did not reimburse Plaintiffs for these bounced check fees.

---

[1] Plaintiff Ballast believes that he was paid for a one (1)-week pay period, as opposed to his regular two (2)-week period, because this check was for his last week of work. As discussed in greater detail below, in or around June 2018, Plaintiff Ballast was given approximately seven (7) days' notice that he was being terminated because Griffin had lost its flagging contract with Con Ed.

104.    Due to insufficient funds in Defendants' account, Plaintiffs would frequently experience delays in recovering their pay. Further, throughout Plaintiffs' respective employment periods, Plaintiffs were paid on a biweekly basis. As manual workers, Plaintiffs were entitled to be paid on a weekly basis, no later than seven (7) days after the end of each workweek. Thus, Plaintiffs are additionally entitled to damages for unreasonably delayed payment of wages.

105.    Approximately seven (7) days prior to their last day of employment in or around late May or early June 2018, Plaintiffs and the Griffin Defendants' other construction flaggers received a notice, signed by Defendant Muñiz, along with their second-to-last paycheck explaining that the following week would be their last week of employment, because Griffin had lost its contract with Con Ed. Various Griffin office workers additionally verbally informed Plaintiffs and Defendants' other construction flaggers throughout the week to return any equipment, such as vests and stop signs, that they had in their possession.

106.    Upon information and belief, Defendants continued to employ security guards, as their security work was governed by other contracts.

107.    Upon information and belief, at the time of Plaintiffs' termination, Griffin employed approximately two hundred (200) construction flaggers working out of the Griffin office, located at located at 587 Crescent Avenue, Bronx, New York 10458.

108.    Approximately two (2) weeks before Griffin informed its employees that the company had lost its Con Ed contract, Plaintiff Simone learned from certain Con Ed workers that another company had put in a lower bid and would therefore be getting the contract. Subsequently, when he went to pick up his payment, a Griffin office employee informed him and certain of Defendants' other flaggers to return their vests, stop signs and any other Griffin equipment they had in their possession, because Con Ed had terminated its contract with Griffin.

109.    Upon information and belief, in order to perform work for Defendants, Plaintiffs were required to hold flagger certification cards as well as OSHA 10-Hour certification.

110.    Throughout the relevant time period, all of Defendants' flaggers were required to take a flagger safety course and wear safety gear, including a hard hat, vest, steel-toed boots, gloves, goggles, and occasionally a dust mask, on job sites.

111.    Throughout the relevant time period, Plaintiffs and Defendants' other construction flaggers performed a variety of tasks, including holding stop/go signs, directing pedestrian and vehicular traffic around construction sites, placing signs around the construction site, positioning safety barriers, cones and caution tape to permit movement of construction equipment, ensuring that no pedestrians were near construction vehicles, closing street intersections and escorting construction vehicles, including backhoes, cutters and dump trucks, as they moved in and out of the construction site to ensure safe passage.

112.    At all relevant times, Plaintiffs and Defendants' other construction flaggers performed their work in and around the zone of construction, in close proximity to construction zones and pedestrian and vehicular traffic.

113.    Regardless of which Con Ed job site they worked on, Plaintiffs' and Defendants' other flaggers' job duties on the construction site remained consistent.

114.    In addition to their flagging duties, Plaintiffs and Defendants' other construction flaggers were also required to perform certain other tasks, including sweeping and cleaning up around the job site and taking tools back to trucks.

115.    Throughout their respective employment periods, Plaintiffs were paid only for time working on Con Ed job sites and did not receive wages of any kind for time spent at the Griffin office waiting for job assignments and picking up and dropping off necessary paperwork and

equipment or for all time spent traveling to and from job sites. Further, as described above, Plaintiffs' paystubs indicate that they were paid an additional two dollars ($2.00) per hour for "vehicle expenses," such that the overtime rate at which they were paid should have been based on the base wage rate (i.e., $13.00), plus the additional two dollars ($2.00), for a total of fifteen dollars ($15.00) per hour. Thus, they are owed significant unpaid overtime wages.

116.    Although Plaintiffs frequently worked a spread of more than ten (10) hours per day or split shifts, they did not receive spread-of-hours premiums equal to an additional hour at the applicable minimum wage for such days.

117.    Plaintiffs did not receive a proper wage notice when they were hired and/or before a change of pay rate, as required by the NYLL, from Defendants at any point during the Relevant Time Period.

118.    Because Plaintiffs' paystubs only accounted for time worked on Con Ed job sites and did not include time spent at the Griffin office waiting for job assignments and picking up and dropping off necessary paperwork and equipment and traveling to and from job sites, the wage statements that Plaintiffs received did not show an accurate accounting of all hours that he had worked during the workweek.

119.    Defendants' failure to pay minimum wages for all hours worked, wages of any kind for time spent at the Griffin office waiting for job assignments and picking up and dropping off necessary paperwork and equipment and traveling to and from job sites, overtime premiums of one and one-half (1.5) times the regular hourly rate for all hours worked in excess of forty (40) per week and spread-of-hours premiums for split shifts or hours worked in excess of ten (10) hours in a day, was a corporate policy that applied to all construction flaggers employed by Defendants.

120.    Upon information and belief, during the period of time for which Plaintiff and the

members of the putative Class performed work on New York City and New York State public streets, roadways and sidewalks, Defendants failed to ensure payment of the correct prevailing rate of wages and supplemental benefits, including overtime pay, to which Plaintiff and other members of the putative Class were entitled.

121.    Defendants' failure to pay Plaintiffs prevailing wages and supplemental benefits for work performed on New York City and New York State public street, roadways and sidewalks was a corporate policy that applied to all of Defendants' construction flaggers throughout the relevant period.

122.    Defendants failed to provide Plaintiffs and their other similarly situated employees with proper wage notices at the time of hire or before a change of pay rate or proper wage statement(s) with every payment of wages or accurate wage statements pursuant to the NYLL.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

123.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

124.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 206 and 215(a)(2).

125.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

126.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore,

Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

127.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

128.    Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by failing to pay overtime premiums of one and one-half (1.5) times the employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

129.    By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

130.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

131.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

132.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

133.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

134.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

135.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

136.    Defendants violated the NYLL overtime rights of the Plaintiff and the Class Members by improperly treating them as exempt from the NYLL when they performed non-exempt duties and failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

137.    Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

138.    Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

139.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

140.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq*., and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

141.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for

unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PAY WAGES
### (Brought on Behalf of Plaintiff and the Class Members)

142.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

143.     Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiffs and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiff all of their wages earned within the week such wages were due.

144.     Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and the Class Members, that is not otherwise authorized by law or by the employee.

145.     By withholding wages and overtime compensation from Plaintiffs, pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiff.

146.     Defendants' failure to pay Plaintiffs wages of any kind for time spent waiting for jobs, picking up and returning time sheets and equipment and traveling between the Griffin office and Con Ed job sites, violated NYLL §§ 191 and 193.

147.     Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, damages for unreasonably delayed

payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## SEVENTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

148.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

149.    Defendants have willfully failed to supply Plaintiffs and the Class Members a proper wage statement as required by Article 6, § 195(3).

150.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## EIGHTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

151.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

152.    Defendant has willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, or before a change of pay rate, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class

31

Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

153.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**NINTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNREIMBURSED BUSINESS EXPENSES</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

154.    Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

155.    Defendants often paid Plaintiffs via paycheck without having sufficient funds in their bank account.  As a result, the checks would bounce, and Plaintiffs would incur a fee through their bank. Defendants failed to reimburse Plaintiffs for the bounced check fees. Plaintiffs additionally incurred certain expenses for gas, tolls and vehicle maintenance when they were required to use their personal vehicles for work Accordingly, Defendants are required to compensate Plaintiffs for all business expenses that Defendants required Plaintiffs to incur without

reimbursement.

156.    The Defendants' NYLL violations have caused Plaintiffs and Class Members irreparable harm for which there is no adequate remedy at law.

157.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover damages from Defendants in the amount of Defendants' unreimbursed business expenses for which Plaintiffs and the Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL § 663(1) *et seq.* and § 196-d.

**TENTH CAUSE OF ACTION**
**<u>BREACH OF CONTRACT</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

158.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

159.    Upon information and belief, the Con Edison Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits or reference to the NYLL provisions governing payment of prevailing wages to be paid to Plaintiff and the employees performing work pursuant to such contracts.

160.    Those prevailing rates of wages and supplemental benefits were made part of the Con Edison Contracts for the benefit of the Plaintiffs and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiffs and Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

161.    Defendants' failure to pay Plaintiffs at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

162.    As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

### ELEVENTH CAUSE OF ACTION
### UNJUST ENRICHMENT & QUANTUM MERUIT
#### (Pled In The Alternative)
#### (Brought on Behalf of Plaintiffs and the Class Members)

163.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

164.    Based on Defendants' failure to pay Plaintiffs the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiffs.

165.    Equity and good conscience require that Defendants pay restitution to Plaintiffs.

166.    Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to the contracts.

167.    Plaintiffs provided valuable services to Defendants performing prevailing wage jobs for which Plaintiff expected compensation. Defendants knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

168.    As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates on

prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiffs are entitled to relief from Defendants under New York's common law of unjust enrichment.

169.    As a result of Defendants' failure to pay Plaintiffs the reasonable value of the valuable services they rendered, Plaintiffs are entitled to relief from Defendants under New York's common law of quantum meruit.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiffs and their counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as

provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of compensatory damages as a result of Defendants' failure to pay all wages to which Plaintiff and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

h.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

i.    An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

j.    An award of damages arising out of unreimbursed business expenses;

k.    An award of liquidated damages for Defendants' failure to pay all wages to which Plaintiff and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

l.    An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

m.   An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL § 198(1-b);

n.   An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Class;

o.   An award of prejudgment and post-judgment interest;

p.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

q.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
April 17, 2020

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative FLSA Collective and Class*

37

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Griffin, ████████████████████████████ ████ and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

_____
Signature
F82763C3676A474...

Victor Ballast

_____
Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Griffin Industries LLC, ███████████████ ████████████ and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

_Luis Simone_

0EF74CD4BFDA46E...

_____          _____
Signature                                              Printed Name

Luis Simone